## The Supervisors of Houghton County v. Seth Rees and others.

*Errors that do not prejudice.* A refusal to submit the facts to the jury upon one branch of plaintiff's claim because of defects in the declaration is held not error of which the plaintiff can complain where it is made to appear by the record that there was a fatal gap in his evidence.

*Tax law: County treasurer: Forwarding delinquent tax lists: Extensions: Time.* The provision of the tax law (*Comp. L. 1871,* § *1034*) requiring the county treasurer to forward by the first day of March to the auditor general certified lists of lands returned as delinquent for unpaid taxes, which the auditor general is authorized to receive at any time during the month of March, is manifestly intended to serve as a guide in matter of time only in the ordinary cases where no extension of time for the collection of taxes is granted; and the requirement as to time, if in any view mandatory, in case of no extension, does not touch cases where extensions are allowed; and in such cases the county treasurer is only required to forward such lists promptly on receiving the proper returns from the collectors.

*County treasurers: Official bond: Forwarding delinquent tax lists: Returns by collectors.* In an action to charge the county treasurer on his bond with failure of duty in not forwarding to the auditor general lists of delinquent tax lands, it is incumbent on the plaintiff to show, not merely that returns of such lands were in fact made by the collectors to the treasurer, and that no transcripts were received from him by the auditor general up to April 1st, but also that the transcripts were not forwarded within a reasonable time after actual return to the treasurer by the collectors.

*Official duty: Presumptions: Neglect of duty.* The law having made the action of the collectors a necessary preliminary to that of the county treasurer, due performance on their part will not be presumed, in the absence of evidence, in order to charge him with having failed to perform duly; the presumption of official regularity applies with equal force to each.

*Submitted on briefs June 15. Decided October 10.*

Error to Houghton Circuit.

*T. M. Brady* and *C. I. Walker,* for plaintiffs in error.

*T. L. Chadbourne, Chandler & Grant* and *S. F. Seager,* for defendants in error, relied mainly upon *Weimer v. Bunbury, 30 Mich., 216.*

GRAVES, J:

Rees was elected treasurer of Houghton county for the

regular term of two years commencing January 1, 1871, and gave to plaintiffs the usual official bond with the other defendants as sureties in the penal sum of thirty thousand dollars.    He entered upon the duties of the office at the beginning of the term and continued until the 25th of October, 1872, when the board of supervisors removed him. James B. Sturges was elected to fill the vacancy, and he entered about the 25th of November.    Some time afterwards this suit was brought on the official bond so given by Rees, and the plaintiffs claimed, *first*, that he refused to account for and pay over money he had received for the county; and, *second*, that he had neglected to return lists to the auditor general of lands delinquent for taxes for 1870 and 1871.

The general issue was pleaded, and in November, 1875, the cause was tried before a jury.

The plaintiffs were allowed to adduce such evidence as they had in support of each of their claims, and the jury were permitted by the judge to pass upon the facts bearing on the first charge, and they found a verdict for the plaintiffs thereon.    So far no question is raised.    But he refused to submit the facts concerning the other charges and founded his refusal upon the indefiniteness and insufficiency of the declaration.    The plaintiffs being dissatisfied, have sought a revision here.    The portion of the declaration which the judge condemned is open to criticism, but as the defendants make the point that there was a fatal gap in the plaintiffs' evidence, it is best to consider that first, because if well taken it follows as matter of law that they were not entitled to a favorable finding on this part of their case, whether the declaration was good or bad, and hence were not wronged by the judge's ruling, and have no cause to complain.    His exclusion of recovery by declining to submit the facts was no more injurious than a direction to find for the defendants would have been, and if the defendants are correct in their position, such a direction would have been proper. The inaccuracy of the ground of the ruling, if it was so, is

in this aspect of the case of no importance. The theory of the plaintiffs is, that it was Rees' official duty on receiving in due form and season lists of delinquent tax lands from the township treasurers to forward transcripts thereof in due form and lawful season to the auditor general; that the township treasurers did in fact seasonably and in proper form report to him such lists, but that he neglected to forward transcripts thereof to the auditor general and thereby became liable to the county for an amount equal to the taxes charged on such lands, less, however, the amount appearing to have been paid. The declaration stated no specific time or times at which the township treasurers made returns to Rees as county treasurer. It simply stated argumentatively that the returns were "properly and seasonably" made, and the charge of neglect to forward transcripts to the auditor general contained no reference to any specific time. It barely stated that Rees did not forward the transcript in the "spring" of the particular year, "nor at any other time."

In this attitude of the case, and considering the question, it is best to refer somewhat liberally to the statutes.

Taxes on real estate are declared to be a lien from the first Monday of December in the year of the assessment.— § *1006, C. L.* And in case no extension is given for collecting, the local collector is required to make returns to the county treasurer on or before the succeeding first day of February.—§ *1003.* And if there is any unpaid tax on land the officer has not been able to collect of the owner or occupant, he is required to make a verified statement of the tax so unpaid and due, with a full and perfect description from the roll of the premises charged, and submit the same to the county treasurer, and thereupon the latter is required to compare such statement with the roll; and if found correct, to certify to it and file it with his certificate in his office. At the same time, the county treasurer is commanded to reject and charge back any lands twice assessed, or so erroneously or defectively described that they

cannot be ascertained.    He is also to give the collector a receipt stating the amount of taxes returned unpaid, and also give him a statement of all taxes rejected.—§§ *1019, 1020, 1021, 1022.*

On receipt of this verified statement from the collector, the county treasurer is required to enter the same in his official books, and make a correct transcript thereof, of all the descriptions of land returned as delinquent for unpaid taxes, except such as he shall have rejected, and which transcript is then required to be compared by the county clerk with the collector's statement as certified by the county treasurer, and if found true by the clerk, he is to append his certificate that he has so examined and compared it, and found it correct.    Such transcript so made, compared and certified, the county treasurer is directed to forward to the auditor general by the first day of March next after the return of the statement, but it is declared to be receivable at any time during said month of March, and when received, the amount is to be credited to the county on the books of the auditor general's office.—§§ *1033, 1034.* The section prescribing the time for sending forward this transcript, and which stands as section *1034* in the compilation, is numbered in the act itself as section sixty-eight. The preceding section, numbered as sixty-seven in the act, regulates the preparation and nature of the transcript.

This return being made to the auditor general, he is given extensive authority to make rejections.  If before sale he discovers that for any reason returned lands should not be sold, it is made his duty to withhold them.—§ *1065.* If he finds out that the tax has been paid to the township or county treasurer, or that the land was doubly assessed, or so erroneously or defectively described that it cannot be sold, or was not subject to taxation at the time of assessment, he is required to reject the claim that the lands are delinquent.—§ *1074.*    Particular provision is made for those cases where he rejects for the reason that the particular tax exceeded lawful limits.—§§ *1079, 1080, 1081.*

We may next notice regulations for extending the time for returning lands as delinquent to the county treasurer. In the first place, the board of supervisors is empowered to allow extension to the first of April, or a month beyond the time prescribed in section sixty-eight (being § *1034* of the compilation) for forwarding transcripts to the auditor general, and including the whole time there authorized for his reception of them. In the second place, if the board of supervisors neglect to extend the time, then the township board, or common council of a city, may grant extension until the first day of March, or up to the very time for forwarding transcripts to the auditor general as before mentioned.—§ *1004*. In case of extension by the township board or city council, the fact is to be certified to the county clerk; and in case of extension in that way, and also in case of extension by the board of supervisors, the county clerk is to certify to the action taken, and attach his "certificate to the transcript of the county treasurer, to be forwarded to the auditor general as required by section sixty-seven."—§§ *1004, 1005*. As already suggested, section sixty-seven deals with the requisites of the transcript, and the circumstances of its preparation and some other matters, but does not touch the time for sending it to the auditor general or the period during which he may receive it. It is the succeeding section which directs it to be sent the first of March and allows it to be received at any time during that month. But this direction is manifestly intended as a guide where the act is allowed to operate without resort to the provisional regulations for extending the time for return to the county treasurer by the collector, and not in cases where the discretionary power to give time is exercised. The regulation harmonizes well enough with the other requirements when the statute is not caused to depart from its general mode of operation and to act exceptionally, but would be plainly inconsistent with the regulation conveying discretionary power to extend until April first the time for doing the very acts without which the transcript to be for-

warded March first could not be made at all.    The passage
which refers to section sixty-seven is very awkward.    It will
hardly do, however, to claim that the legislature meant to
refer to section sixty-eight, and in referring to section sixty-
seven committed a blunder.    If the reference had actually
expressed section sixty-eight, it must have resulted in great
absurdity if adhered to in construction.    It seems reason-
able to infer that it was thought best to apply the same
regulations concerning the preparation of transcripts for the
auditor general to both classes of cases, and that section
sixty-seven was purposely referred to in order to secure that
object, and that it was not designed to apply to the excep-
tional class the directions in section sixty-eight which fix
the first day of March for forwarding, and the end of
that month as the limit for receiving transcripts.    There
is no other provision which suggests any specific day for
forwarding or any specific month for receiving; and as the
county treasurer cannot make out transcripts before returns
to him by the local collectors, it must follow that when
these returns are postponed by extensions the treasurer is
not required to forward by the first day of March, or the
auditor general's receptions limited to that month.    Whether
the requirement in section sixty-eight is in any view man-
datory in case there is no extension, it does not touch cases
where extensions are allowed, and it would seem to be a
reasonable conclusion that in the latter class the county
treasurer should forward promptly on receiving the proper
returns from collectors.

  In this way analogy would be kept up with the course
marked out where there are no extensions, and unnecessary
delay, which is especially objectionable in tax proceedings,
would be avoided.    But collectors may fail to return in
season in each class of cases, and thereby prevent the county
treasurer from forwarding in the one by the first of March,
or in the other promptly after the end of the extension, since,
as already stated, he cannot make the transcript until he
receives the returns due from the collectors.

Now, the legislature could never have designed to require him to perform an act rendered impossible by the non-performance of acts they required the collectors to perform as a ground for his action, or to make him responsible for the consequences of their exclusive neglect. Even the requirement of section sixty-eight is necessarily subject to this consideration.

It would seem plain, therefore, that in an action to charge the treasurer on his bond with failure of duty in not forwarding to the auditor general lists of delinquent tax lands, it is incumbent on the plaintiffs to show, not merely that returns of such lands were in fact made by the collectors to the treasurer and that no transcripts were received from him by the auditor general up to April first, but at least that the further fact must be shown or appear, that the transcripts were not received by the auditor general up to some certain time within which they ought to have been received in view of the time of actual return by the collectors. So long as it does not appear at what time the collectors made return to the treasurer, it does not appear they were in such time as to require him, or even to enable him, to make and forward transcripts in season to be received on or before April first, and hence the facts do not show him in default.

We may now refer to the facts adduced. The plaintiffs gave evidence that the several township treasurers returned delinquent taxes upon lands to a large amount on account of assessments for the years 1870 and 1871 respectively, and they also gave in evidence certificates made by the deputy auditor general, that he had made diligent search for the transcripts made by the county treasurer for the county of Houghton of descriptions of lands returned to the auditor general's office as delinquent for unpaid taxes of said years, and was unable to find any as made by said treasurer and received at the auditor general's office prior to April first, 1871, for the taxes of 1870, and was likewise unable to find any as made by said treasurer and received at said

office prior to April first, 1872, for the taxes of 1871. No other evidence was given of failure by Rees to forward transcripts or of their non-reception at the auditor general's office. And the record states positively that no evidence was given to show at what time or times the township treasurers made their reports of delinquent tax lands to him. If these certificates from the auditor general's office are allowed as proof that transcripts were not received prior to April first, and also of the fact that they were not made in time to be received prior to April first, they cannot operate further and conduce to show failure to receive, or failure to make, later. For aught they can be claimed to prove, or tend to prove, the transcripts may have been made in season to be received and may have been received on or shortly after April first, and as they are shaped and worded they come very near suggesting an inference that transcripts were received after the end of March. At all events, as there was no proof of the time or times of the returns by the township treasurers to the county treasurer, there were no facts to show that the latter was in a situation to render it possible for him to make and forward transcripts in time to be received at the auditor general's office prior to April first, and hence there was a want of facts to prove him in default.

But it may be said that this omission of express evidence may be supplied by presumption, and that it should be intended that the township treasurers performed their duty, and consequently made their returns in time to enable the county treasurer to make and forward transcripts in season to be received at the auditor general's office prior to April first. Their duty in regard to the time of making returns is, as we have seen, not the same in all cases. There may be extensions even up to the first of April, and, as already stated, the requirement for forwarding lists by the county treasurer in season to be received before April first does not apply where the power to grant extensions is exercised. Passing this, however, we think the case cannot

receive aid through the presumption in question. There is as much reason for saying that Rees must be presumed to have performed his duty, and to have forwarded transcripts as soon as he had the necessary reports from below, as there is for saying the township treasurers must be presumed to have performed theirs, and to have made their returns to him seasonably. The law made their action a necessary preliminary to his, and it will not allow due performance on their part to be proved by naked presumption, in order to charge him with having failed to perform duly. The point is ruled in *Weimer v. Bunbury, 30 Mich., 216.*

The case is open to many observations concerning the averments necessary and proper in order to state a cause of action for such a delinquency as is mentioned, and concerning the evidence necessary and the measure of recovery. But there is no occasion to consider such matters now. Before leaving, it may not be amiss to say, that the defendants claimed, and gave evidence tending to show, that there were extensions in several of the townships for each year, and that in some instances they were up to March first. If such was the case, the fact was of some importance in reference to the mode of stating a cause of action, and in reference to the proof to be made.

It only remains to say, that the evidence was entirely wanting in respect to a fact which was essential to a right of action as to this branch of the case, and hence the ruling of the court, whatever view may be taken of the ground of it, was not injurious.

The judgment must be affirmed, with costs.

The other Justices concurred.